FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

2005 DEC 14  P 3: 03

CSX TRANSPORTATION, INC.

Plaintiff,

v.

Case No.:

3:05-cv-1271-J-12 mcr

PROFESSIONAL TRANSPORTATION, INC.

Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, CSX TRANSPORTATION, INC. ("CSXT"), by and through its undersigned counsel, files this Complaint for Declaratory Judgment against Defendant, PROFESSIONAL TRANSPORTATION, INC. ("PTI"), pursuant to 28 U.S.C. §§ 2201 and 2202, and states:

### PARTIES

1.  CSXT is a Class 1 railroad that provides freight rail transportation services in twenty-three eastern states, two Canadian provinces, and the District of Columbia. CSXT, a Virginia corporation, is a wholly owned subsidiary of public company CSX Corporation. CSXT's headquarters and principal place of business are located in Jacksonville, Florida.

2.  PTI is a transportation service provider that arranges and provides motor vehicle transportation services. PTI is an Indiana corporation and has its principal place of business in Evansville, Indiana.

### JURISDICTION

3.  This Court has subject matter jurisdiction under 28 U.S.C. §1332(a)(1). PTI regularly conducts business in and has maintained regular and substantial contacts with the State of Florida such that requiring Defendant to respond to this action will not violate due process.

PTI is subject to the personal jurisdiction of the Court and is amenable to service of process pursuant to the Florida long-arm statute, Fla. Stat. § 48.193 and Fed. R. Civ. P. 4(e). In addition, the amount in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs.

## VENUE

4. Venue is proper in this district in accordance with 28 U.S.C. § 1391(a) in that a substantial part of the events giving rise to the claims in this action occurred in this judicial district, and the Defendant is subject to personal jurisdiction in this judicial district at the time of the commencement of this action.

## STATEMENT OF THE CASE

5. This is an action for a declaration of the parties' rights and obligations under a System Agreement (the "Agreement") between CSXT and PTI, which is attached hereto as **Exhibit 1**. This action is filed for the purpose of resolving a question of actual controversy between the parties, as alleged herein. As provided below, PTI has made demands from CSXT for amounts purportedly due under the Agreement, which CSXT denies are owed.

6. The term of the Agreement between CSXT and PTI commenced on June 1, 2002 and ended on June 30, 2004. The Agreement comprehensively defined the rights, duties, and obligations of the parties respecting the provision of certain transportation services. More specifically, CSXT procured and PTI agreed to provide motor vehicle transportation services between various points and locations on the CSXT rail system for transporting CSXT's train and engine crews to and from CSXT's trains. PTI contractually agreed to render such services as CSXT requested during the term of the Agreement and to perform, in accordance with its terms, all services and responsibilities described in the Agreement.

2

7. Among other detailed provisions, the Agreement contained comprehensive and specific provisions governing the allocation of liability arising out of the provision of the services contemplated. See Agreement, Section 10. As part of its performance under the Agreement, PTI contractually assumed the entire risk of claims arising out of the services it rendered, as well as the duty to indemnify and defend CSXT and hold it harmless from any such claims, with the single exception of incidents where the sole proximate cause was due to CSXT's negligence. See Exhibit 1, Section 10(B). For example:

(a) PTI expressly assumed "all risk of damage to property or injury to or death of any person whosoever," including both PTI's and CSXT's employees arising out of PTI's and CSXT's negligence. Agreement, Section 10(A).

(b) PTI also agreed to broad contractual indemnification of CSXT. Specifically, PTI agreed to defend, indemnify and save CSXT harmless from "any and all damages, liabilities, claims, awards (including compensatory and punitive damages)," charges, settlements, reasonable attorneys' fees and/or costs and expenses associated with any property damage, environmental liability or claim, discrimination or harassment liability or claim, or injury to or death of any person, or any other type of liability or claim, including claims arising out of CSXT's negligence, arising out of the services being rendered by PTI. Agreement, Section 10(B).

(c) Finally, in the event of any claim or lawsuit filed against CSXT, PTI, "at its sole cost and expense" was obligated to investigate and respond to the claim or lawsuit and save CSXT harmless "against all associated costs, expenses, settlements, and judgments." Agreement, Section 10(C).

8. To satisfy its contractual obligations to CSXT arising under the Agreement, as well as for "coverage of any claims which may arise" and "liability for [PTI's] other actions," the Agreement also contained specific requirements regarding the insurance PTI was obligated to procure and maintain during the term of the Agreement. Agreement, Section 11(A). In short, PTI was required to procure and maintain "at its own sole cost and expense:" (1) a policy of Business Automobile Liability Insurance with certain attributes and limits, as more fully described in the Agreement; and, (2) a policy or policies providing coverage for Workers' Compensation. Agreement, Section 11(A) and (B).

9. Disputes have arisen between the parties under Section 10(D) of the Agreement, which provides, in relevant part:

> In the event that [PTI] is unable to obtain or renew the insurance required pursuant to Section 11 of this Agreement without modification of this Section 10(D), or in the event that the renewal premium for such insurance is at least seventeen and one-half percent (17.5%) greater than the premium for the immediately preceding policy term, [CSXT] and [PTI] agree to negotiate in good faith concerning such modification.

See Exhibit 1, Section 10(D).

10. Thus, under the terms of Section 10(D), in the event PTI could not obtain or renew insurance (which did not occur here) or in the event its insurance "renewal premium" for one year increased more than 17.5% from the prior year's "renewal premium", the parties would attempt to negotiate modifications to the obligations imposed upon PTI under Section 10(D) so that PTI could obtain insurance or do so at a reduced renewal premium. It is obvious under Section 10(D) that PTI was required to bring any problems or issues to CSXT's attention **before** procuring insurance and also that only the actual insurance premium paid to the insurer was to be considered as the "renewal premium."

4

11. During the course of the Agreement, PTI procured and maintained, at its own cost and expense, Business Automobile Liability Insurance and Worker's Compensation coverage. For PTI's Business Automobile Liability Insurance and Worker's Compensation coverage (other than the State of Ohio), PTI procured insurance which became effective April 1 and continued in effect until March 31 of the following year. Specifically, during the two-year term of the Agreement, PTI procured or renewed insurance twice: it procured/renewed Business Automobile Liability insurance and Worker's Compensation insurance effective as of April 1, 2003, through March 31, 2004, and then procured/renewed similar policies effective from April 1, 2004, through the end of the Agreement. At the time the Agreement was signed, in June 2002, PTI's insurance was already in place such that no "renewal premiums" could possibly arise until April 1, 2003.

12. Prior to procuring or renewing the insurance required under the Agreement that became effective on April 1, 2003 and on April 1, 2004, PTI never advised CSXT of any problem or sought any modification of its obligations under Section 10(D). Moreover, at no time during the term of the Agreement did PTI's renewal premiums for Business Automobile Liability Insurance and Worker's Compensation coverage increase by greater than 17.5%.

13. This was an enormously valuable contract for PTI. For the motor vehicle transportation services rendered and other obligations undertaken by PTI under the Agreement, CSXT paid PTI substantial sums. CSXT paid PTI $31.5 million in 2002, $38.7 million in 2003, and $45 million in 2004. CSXT contends that it has paid PTI all amounts due under the Agreement.

14. PTI first contacted CSXT by letter in February 2004, four months before the Agreement expired, to request a retroactive negotiation under Section 10(D) of the Agreement.

This request did not precede PTI's purchasing insurance coverage and incurring liability for the "renewal premiums" PTI agreed to pay its insurers to procure a policy. Instead, in February 2004, PTI purported to put CSXT on notice and seek negotiations due to PTI's contention that its 2002 costs for workers' compensation and auto insurance had increased over the 2001 policy year by over $1 million. However, PTI's 2002 policies were already in effect at the time the term of the Agreement commenced in June 2002 and any comparison to its 2001 insurance policies was irrelevant and immaterial under the Agreement. Notably, this was the first and only time PTI made any such request during the term of the Agreement, despite the fact that renewals of insurance had occurred in both April 2003 (for the 4/1/03 to 3/31/04 policy year) and April 2004 (for the 4/1/04-3/31/05 policy year).

15. PTI's February 2004 letter was also the first time that PTI contended that CSXT had some duty to negotiate with PTI due to an alleged escalation of PTI's claims costs, settlements and other expenses associated with PTI's claims administration obligations which PTI had assumed under the express terms of other Sections of Section 10 of the Agreement, and despite the Agreement's explicit limitation in the narrow "renewal premium" term utilized at Section 10(D). Notably, Section 10(D) only covers "renewal premiums" and affords no rights to PTI to seek recovery due to an increase in its other costs and expenses arising out of claims or performance under the Agreement. Thus, while PTI claims an entitlement to seek reimbursement for expenses other than "renewal premiums", the Agreement does not permit such a recovery.

16. Since February 2004, PTI has made and continues to make exorbitant claims and demands of CSXT based upon PTI's flawed internal calculations and misguided arguments that its all-inclusive costs of risk incurred before, during and after the term of the Agreement,

including advances paid at the beginning of the policy period for so-called "security for the loss reserves," actual claims paid, and various other pre-payment funds and surcharges are CSXT's responsibility. Notwithstanding the fact that PTI – not CSXT – agreed to bear financial responsibility for virtually all claims arising out of the services PTI provided under the Agreement, PTI now contends that CSXT should pay PTI – as a surcharge over and above the substantial compensation PTI has already earned under the Agreement – for PTI's claims costs and other all-inclusive costs of risk PTI incurred before, during and after the Agreement's term. PTI's current interpretation of Section 10(D) – comparing expenses to a "base year" that preceded the effective date of the Agreement, suddenly treating the narrow term "renewal premium" as a catch-all for all costs of risk and claims expenses, and insisting on a cash payment from CSXT for its business expenses – cannot be reconciled with the plain and unambiguous meaning of Section 10(D) and other applicable provisions of the Agreement.

## FIRST CAUSE OF ACTION

17. CSXT realleges and incorporates by reference the allegations of Paragraphs 1-16 of this Complaint.

18. The parties have an actual dispute related to the meaning and legal effect of Section 10(D) of the Agreement.

19. CSXT contends that the "renewal premium" refers and relates to the fixed amount of compensation paid to an insurance carrier to procure and obtain a policy of insurance, and does not include the wide ranging, all-inclusive costs PTI seeks, all of which represent costs PTI agreed to incur exclusively. Despite the clear language it agreed to in 2002, PTI now contends that the term "renewal premium" refers to broad and all-inclusive costs of risk, most of which encompasses settlements and other claims costs for which PTI has already accepted liability

under the express terms of the Agreement. Thus, in calculating alleged increases to "renewal premiums", PTI has inflated its calculations by including costs and expenses that are not, in fact, "renewal premiums."

20.     CSXT also contends that PTI failed to comply with the terms of the Agreement because it failed to make a timely request for negotiating any modifications. It is obvious under Section 10(D) that PTI was required to bring any problems or issues to CSXT's attention **before** procuring insurance. Having failed to do so, PTI has waived its right to any recovery and possesses no entitlement to any further payments under the Agreement. By contrast, PTI contends that CSXT is retroactively liable to PTI for a wide range of costs incurred – in the form of added compensation under the Agreement, or a surcharge – despite the fact that plain language of Section 10(D) only provides for advance negotiations directed at possible modifications of the obligations of PTI under Section 10(D) prior to issuance of a policy and, in no way, prescribes a sum due to PTI.

21.     CSXT contends that the phrase "the immediately preceding policy term" as used in Section 10(D) of the Agreement refers to the term of a policy of insurance that immediately preceded the current term of a policy of insurance. Moreover, the comparison to the "immediately preceding policy term" only had application as to new policies effective April 1, 2003 and April 1, 2004. PTI, on the other hand, contends that this phrase relates to its entire cost of risk (claims paid, settlement costs, attorneys fees, deductibles, etc.) incurred in a so-called "base year" (April 1, 2001 – March 31, 2002) which predates the effective date of the Agreement. PTI then contends that it can compare its total cost of risk incurred in each of several succeeding policy years back to this "base year" for determination of whether the total cost of risk incurred in individual policy years exceeds the total cost of risk in the "base year" by

more than 17.5%. Finally, PTI contends that if its total cost of risk (which it contends includes far more than the premium amount paid to a third party insurer) in a given policy year exceeds the total cost of risk incurred in the "base year" by greater than 17.5%, CSXT owes PTI added compensation under the Agreement for every cost of risk dollar PTI incurred over the "base year" expenses.

22.   CSXT contends that under Section 10(D) of the Agreement, PTI's payments related to damages, liabilities, claims, awards, charges, settlements, attorneys' fees and/or costs are irrelevant.

23.   As a result of PTI's continued demands and insistence on further compensation due from CSXT under this Agreement, a dispute exists between CSXT and PTI concerning interpretation of the Agreement, and the rights and obligations of the parties.

24.   CSXT seeks a declaration that PTI is not entitled to any further compensation as demanded under the Agreement.

WHEREFORE, CSXT respectfully requests this Court enter a judgment declaring that:

A.   The term "renewal premium" as used in the Agreement refers to the consideration paid to a third party insurance company to obtain or renew the policies of insurance required by the Agreement and does not include other categories of costs such as deductibles, self-funded/self-insured retentions, or the satisfaction of actual individual claims;

B.   PTI's claims, to the extent they include costs of risk such as damages, liabilities, claims, awards (including compensatory and punitive damages), charges, settlements, reasonable attorneys' fees and/or costs and expenses associated with any property damage, environmental liability or claim, discrimination or harassment liability or claim, or injury to or death of any person, or any other type of liability or claim, including claims arising out of CSXT's negligence,

9

arising out of the services being rendered by PTI, are PTI's financial responsibility under the Agreement;

C. The phrase "the immediately preceding policy term" as used in the Agreement refers to the term of a policy of insurance that immediately preceded the current term of a policy of insurance and only had application as to new policies effective April 1, 2003 and April 1, 2004;

D. PTI waived any rights under the Agreement, including under Section 10(D), by failing to timely raise any issue relating to its insurance renewals prior to procuring the insurance policies in question and PTI possesses no right to a retroactive payment or adjustment;

E. No increase in renewal premium occurred above 17.5% during the term of the Agreement;

F. Even if there was an increase in renewal premium above 17.5%, CSXT bears no legal liability for any such increase;

G. CSXT has no liability to PTI arising out of or related to Section 10(D);

H. CSXT has no duty to engage in any further negotiations with PTI;

I. All matters arising under the Agreement are fully and finally resolved and no further amounts are due from CSXT thereunder;

J. CSXT is entitled to such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CSXT respectfully requests a judgment in which the Court declares the rights and responsibilities of the parties on the issues described above, and grants such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Michael A. Abel
Florida Bar No. 0075078
Attorney for CSX Transportation, Inc.
Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
(904) 353-2000
(904) 598-5539 (Facsimile)
Email: michael.abel@hklaw.com