**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CSX TRANSPORTATION, INC.,

    Plaintiff,

v.                                                                  Case No. 3:05-CV-1271-J-32MCR

PROFESSIONAL TRANSPORTATION, INC.,

    Defendant.

---

**RESPONSIVE MEMORANDUM OF CSX TRANSPORTATION, INC.
TO DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
<u>MOTION TO DISMISS COUNTERCLAIM</u>**

Plaintiff, CSX Transportation, Inc. ("CSXT"), in accordance with Local Rule 3.01(b) and the Court's Order of May 16, 2006 (Doc. 29), submits the following Responsive Memorandum to Defendant, Professional Transportation, Inc.'s (PTI) Memorandum of Law in Opposition to CSXT's Motion to Dismiss Counterclaim (Doc. 27) (PTI's "Opposition").

<u>Introduction</u>

In its Motion to Dismiss Counterclaim (Doc. 25), CSXT seeks dismissal of PTI's counterclaim on the basis that Section 10(D) of the System Agreement on which PTI's claim is based represents an unenforceable agreement to agree and, further, even assuming the truth of the allegation that CSXT failed and refused to negotiate with PTI regarding a future modification to the System Agreement, PTI has failed to state a claim where the alleged breach of contract arises out of the failure to negotiate a modification or amendment to a contract. As discussed herein, PTI's reliance on authority that it contends refutes CSXT's claim and arguments is

misplaced and unavailing and, in fact, further supports CSXT's position that PTI has not stated a claim upon which relief can be granted.

## Argument

PTI cites Innkeepers Intl., Inc. v. McCoy Motels, Ltd., 324 So. 2d 676 (4th DCA 1976) and similar authority for the proposition that the presence of "blanks" or "gaps" in a contract is not fatal to the validity of the contract if the blanks or gaps concern non-essential terms. Id. at 678. In Innkeepers, the developers of a hotel entered into an agreement with a company that provided consulting services during construction of the hotel. Id. at 677. The parties further agreed that, after construction, the consultants would manage the hotel for three years at a specific, agreed upon, annual compensation. Id. Despite this agreement, the developers advised the consultants during construction that it did not intend to employ the firm to manage the hotel after construction concluded. Id. The developers contended, in part, that the parties had never agreed upon a date that the management services would commence, and that the date had been omitted because the developer had not yet decided whether it would, in fact, employ the firm as manager. Id. The developers further contended that various instruments the parties had signed only represented an agreement to agree at a later time as to whether the services of the consulting firm would be utilized on the project. Id.

The court held that the "blank" – that is, the missing date that the management services were to begin – was a "non-essential element in the minds of the contracting parties." Id. at 678. As to the developer's contention that the agreement was not enforceable due to an incomplete term, the Court stated that a contract is not necessarily lacking in effect because it expressed an idea that something is left to future agreement. Id. While the parties may have disagreed as to the exact time that the management services were to begin, all other material terms had been

2

agreed upon (i.e. the term, and the compensation), and there was no disagreement that it would be begin near completion of construction of the hotel. Id.[1]

The cases PTI cites stand for the general proposition that an agreement is valid and enforceable where there has been a meeting of the minds on all material terms, even though the parties may not have reached full and final agreement on all non-essential terms. From this, PTI argues that CSXT's characterization of Section 10(D) of the System Agreement as an unenforceable agreement to agree is incorrect in view of this authority in which courts have enforced agreements in which non-essential terms were left to future agreement. PTI's reliance on that authority in this case is misplaced. The cases PTI cites are completely inapplicable to a situation like this where the agreement at issue has expired after all the terms were fully performed by both parties and where the "gap" or "blank" does not relate to a minor or non-essential term but, in fact, relates the *only* issue in dispute and forms the very basis of the claim. These cases might apply if, for example, PTI or CSXT had refused to undertake their respective duties and obligations under the System Agreement (providing motor vehicle transportation service for CSXT's train and engine crews) by claiming that a gap or blank existed relating to future modifications to the agreement regarding insurance costs under Section 10(d). Unlike the parties in the cases PTI cites, however, CSXT is not refusing to perform the System Agreement,

---

[1] Other authority PTI cites stands for the same general proposition. See Peninsula Int'l. Corp. v. Citizens and Southern Int'l. Bank, 19 B.R. 762, 763-64 (S.D. Fla. 1982) (modification of a security agreement, executed by the parties, contained all of the essential terms and was fully enforceable despite a provision that it would be supplemented by the formal written agreement of the parties; court rejected the Bank's position that the original agreement was merely an agreement to negotiate further.); Don L. Tullis and Assoc., Inc. v. Benge, 473 So.2d 1384, 1385-86 (1st DCA 1985) (settlement agreement contained all of the essential terms and was capable of enforcement); Sav-a-Stop v. Jaydon, 124 B.R. 356, 359 (M.D. Fla. 1991) (settlement agreement was enforceable where there was a meeting of the minds on all material terms.); Leopold v. Kimball Hill Homes Florida, Inc., 842 So.2d 133, 137 (2nd DCA 2003) (finding that the parties had a meeting of the minds as to the essential terms of a home construction contract, despite the fact that the home buyer had added language to the financing contingency clause).

nor is it claiming that the System Agreement is unenforceable by holding out the "gap" of the future agreement contemplated by Section 10(D) as the reason. Here, the System Agreement at issue has been fully performed and expired almost two years ago after a two year term (not six years, as PTI states in its Opposition).

Furthermore, in Innkeepers, the leading case PTI cites, the court observed that an agreement to agree can be enforceable where all of the terms and conditions of the postponed agreement have been specified. Innkeepers, 324 So.2d at 678. "A contract should not be held void for uncertainty unless there is no other way out and indefiniteness must reach the point where construction becomes futile." Id. citing Blackhawk Heat & P. Co., Inc. v. Data Lease Fin. Corp., 302 So.2d 404 (Fla. 1974). In the present matter, however, the "postponed agreement" relates to future modifications of the System Agreement (essentially, an amendment to the agreement), not missing gaps or blanks in an existing agreement containing non-essential terms. In sum, even acknowledging that an agreement to agree can be enforceable where all of the terms and conditions of the postponed agreement have been specified, the parties here never specified *any* of the terms and conditions of the agreement to agree regarding future modifications of the System Agreement. PTI does not allege, and cannot allege, otherwise.

Based on the allegations in PTI's Counterclaim and the exhibits attached thereto, PTI has failed to state a claim for breach of the System Agreement. This is clear based upon the allegations in PTI's Counterclaim, its arguments in briefing to this Court, and from the explicit and unambiguous terms of the System Agreement itself that PTI attaches to its Counterclaim. As plead, PTI's Counterclaim refers explicitly, as it must, to a future agreement and states that Section 10(D) "*would provide* for modification of contractual terms." Counterclaim ¶ 7 (emphasis added). In its Opposition, PTI similarly refers to a possible future amendment of the

4

System Agreement when it refers to good faith negotiations "to determine *whether to modify* the allocation of liability and insurance." Opposition, P. 8 (emphasis added). Finally, the System Agreement itself that PTI attaches to its Counterclaim refers explicitly to a negotiation for future modification of the System Agreement. Agreement, Section 10(D). PTI's entire counterclaim rises or falls based on the single section of the System Agreement and is based on the allegation that CSXT refused to negotiate a future modification of the System Agreement. Even assuming the truth of the allegation that CSXT failed and refused to negotiate with PTI regarding a future modification to the System Agreement, PTI has failed to state a claim where the breach of contract arises out of the alleged failure to negotiate a modification or amendment to a contract. Department of Corrections v. C&W Food Service, Inc., 765 So. 2d 728, 729 (1st DCA 2000).[2]

It is inescapable that Section 10(D), by its express terms, only requires that the parties negotiate future modifications to the System Agreement. There is no remedy for the alleged breach of a promise to negotiate a contract because there is no way to determine whether the parties would have reached an agreement had they negotiated. C&W, 765 So. 2d at 729. The failure to negotiate in good faith a renewal of a contract (which is "at most, an agreement to agree on something in the future"), as was the case in C&W, 765 So.2d at 729, is legally

---

[2] PTI fails in its efforts to dismiss or otherwise distinguish Department of Corrections v. C&W Food Service, Inc., 765 So. 2d 728, 729 (1st DCA 2000), a case squarely on point. PTI states that the Court in C&W found that the contract in that dispute did not comply with the statute and, therefore, the renewal clause was unenforceable. Opposition, p. 5-6, n.1. This is incorrect. The Court found that the contact at issue contained language in its renewal clause that was essentially the same as the language of the statute and effectively incorporated the statutory principle that renewal is authorized, not required. C&W, 765 So.2d at 730. While the outcome of the case turned on the application of a specific portion of a statute governing state procurement contracts, the court nevertheless independently applied the legal principle that the Department's breach of its alleged duty to negotiate in good faith would not entitle the contractor to a remedy as the alleged duty was, at most, an agreement to agree on something in the future, and there was no way to determine whether the parties would have reached an agreement had they negotiated. Id. at 729-30.

5

indistinguishable from the alleged failure to negotiate in good faith a modification or amendment to the System Agreement.

Respectfully submitted,

s/Michael A. Abel
Michael A. Abel, Esquire, FL Bar #0075078
Attorney for CSX Transportation, Inc.
Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
(904) 353-2000
(904) 358-1872 (Facsimile)
Email: michael.abel@hklaw.com
Attorney for CSX Transportation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Robert B. George, Esquire
Rutledge R. Liles, Esquire
LILES, GAVIN, COSTANTINO & GEORGE
225 Water Street, Suite 1500
Jacksonville, Florida 32202
Email: rgeorge@lgcglaw.com

I hereby certify that on May 22, 2006, I sent a notice of the foregoing by electronic mail to the following:

Paul J. Wallace, Esquire
BOWERS HARRISON, LLP
25 N. W. Riverside Drive, 2nd Floor
Evansville, IN 47708
Email: pjw@bowersharrison.com

s/ Michael A. Abel
Attorney